Filed 7/31/26  Fox v. Plascencia CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JACKIE FOX, as Trustee, etc., | B348211 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24SMCV01550) |
| v. | |
| JOSEPH PLASCENCIA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harry Jay Ford III, Judge.  Affirmed.

Gary D. Fidler & Associates, Gary D. Fidler and Samantha Fidler for Defendants and Appellants.

Davidovich Law Group, Niv Davidovich and Jodi C. Rosner for Plaintiff and Respondent.

_____

Respondent Jackie Fox filed an unlawful detainer action against her tenants, appellants Joseph and Lorena Plascencia.[1] The trial court found appellants defaulted on rent; received notice to pay rent or vacate the property; did not pay the amount due; and remained in the property. It entered judgment for Fox. The record supports the court's finding that appellants were properly served with notice to pay rent or quit. We affirm.

## FACTS AND PROCEDURAL HISTORY

### The 2018 Lease

In 2018, the parties entered a lease agreement (Lease) for a house in Brentwood. The Lease term ended on May 14, 2020. The monthly rent was $12,000.

The parties signed an Addendum in 2020 to extend the Lease to May 14, 2021, at a reduced monthly rate of $10,000. The Addendum incorporated by reference the terms of the Lease. It stated that the Lease could be extended for an additional year at a rate of no more $12,000, and for up to two additional years, until May 14, 2023, in one-year increments.

In 2021, the parties signed Extension No. 1, extending the Lease until May 14, 2022, at $12,000 per month. In 2022, they signed Extension No. 2, extending the Lease until May 14, 2023, at $12,000 per month. Both extensions are "incorporated in and made a part of" the Lease.

When Extension No. 2 expired, the Lease became a month-to-month tenancy. In April 2023, Fox served notice that rent would increase to $15,000 in 90 days. By February 2024, appellants were in arrears.

---

[1] Fox sued appellants as trustee of the CF Fox and JS Fox Living Trust.

2

## The Unlawful Detainer Action

On April 2, 2024, Fox filed an unlawful detainer action. The complaint alleged that appellants were served with a three-day notice to pay rent or quit (first Notice). The first Notice lists a delinquency of $60,000 accrued between June and November 2022. A second Notice sought $5,000 for nonpayment of rent in February 2024. The complaint alleged that the Notices were served and posted on March 4 and 6, 2024.[2]

Appellants demurred. At a hearing, the parties stipulated to sustain the demurrer with leave to amend. In a first amended complaint (FAC), Fox alleged past due rent of $5,000 for February 2024. The FAC eliminated Fox's claim for $60,000 pursuant to the first Notice.

Appellants demurred to the FAC. They argued that their children were improperly served with the Notices; the FAC does not explain why monthly rent increased from $12,000 to $15,000; and the FAC contradicts statements in the Notices that rent stabilization laws apply. The court overruled the demurrer.

## The Trial

A court trial was held in April 2025. The parties testified. The appellate record has no trial transcript.

Appellants argued that they lacked adequate notice of the rent increase from $10,000 to $12,000 in 2021. Fox was estopped from suing because the Notices stated that the lease is subject to a rent stabilization ordinance. They argued that the Notices—seeking different amounts—were ineffective and confusing. Appellants believed they did not have to pay rent increases because the lease was covered by a rent control ordinance and by

---

[2] Appellants concede they received notice on those dates.

state law requiring notification that a property is exempt from tenant protections.

Fox countered that (1) the Lease is for a single-family residence, and (2) the Extensions continued the original 2018 leasehold. These two factors make the Lease exempt from state and local laws concerning rent increases. Fox sought $5,000 per the second Notice, plus $500 per day from March 15, 2024, until the date of judgment.

## The Trial Court's Ruling

The court found (1) appellants did not pay rent; (2) Fox gave proper notice to pay rent or vacate; (3) notice was served more than three days before Fox filed suit; (4) the amount stated in the notice was not more than what appellants owed; (5) the arrears were unpaid; (6) Fox is entitled to unpaid rent of $5,000; (7) Fox is entitled to holdover damages of $211,500 for March 2024 to May 2025; (8) Fox is entitled to recover costs as the prevailing party.

The court made additional findings that the Lease was extended twice. The parties discussed extending it again in 2023, but disagreed about the rent, which appellants felt should remain $12,000 per month. Fox served notice that rent would increase to $15,000 beginning in July 2023. The Lease became a month-to-month tenancy.

The court concluded that rent increases from $10,000 to $12,000 and later from $12,000 to $15,000 were not prohibited by the Lease or by state or local laws. The court was "not persuaded" that appellants were confused by the Notices to pay rent or that they based their refusal to comply on state or local laws. The court entered judgment for Fox for $217,845, canceled

4

the Lease, and gave Fox possession of the property.  Appeal was taken from the judgment.

## DISCUSSION

Appellants claim they are entitled to judgment because Fox served "facially defective Notices."  " '[P]roper service on the lessee of a valid three-day notice to pay rent or quit is an essential prerequisite to a judgment' " for the landlord.  (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425.)  On appeal, we assess findings of fact to determine if they are supported by substantial evidence and we review legal conclusions de novo.  (*Id.* at pp. 1425–1426.)

A tenant who defaults in the payment of rent must receive "three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring its payment, stating the amount that is due, the name, telephone number, and address of the person to whom the rent payment shall be made." (Code Civ. Proc., § 1161, subd. 2.)  The notice "may be served at any time within one year after the rent becomes due." (*Ibid.*)

It is undisputed that Fox served two Notices.  The first Notice, for unpaid rent in 2022, was served more than a year after rent became due.  (Code Civ. Proc., § 1161, subd. 2; *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697 [a landlord who waits more than a year to collect unpaid rent must bring an ordinary breach of contract action and cannot use the unlawful detainer statute].)  The first Notice was ineffectual, and Fox did not seek to recover unpaid 2022 rent in the FAC or at trial.[3]

---

[3] Appellants stipulated below to allow Fox to file the FAC, which dropped her claim for unpaid 2022 rent.  They do not challenge on appeal her right to amend.

The FAC relies only on the second Notice for $5,000 for unpaid rent in 2024.  This is the Notice tried by the court.  It complies with the requirements of the unlawful detainer statute.  It is written; requires payment; warns that Fox will sue to obtain possession; states the amount due, and the name, telephone number, and address of the person to whom payment must be made.  (Code Civ. Proc., § 1161, subd. 2; compare *Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 459 [notice did not warn that the landlord would repossess the property or list an address where rent could be paid].)

Appellants claim they "were fundamentally confused" by the "contradictory" Notices.  On their face, the Notices cover different rental periods, one in 2022 and one in 2024, so they are not contradictory.  The court heard testimony but was "not persuaded that Defendant was confused by the service of the two notices."  As the trier of fact, the court weighed witness credibility.  We cannot reassess on appeal whether appellants were confused by the Notices.[4]

Appellants argue that the second Notice "did not clarify whether it superseded the first notice."  They are mistaken.  The second Notice reads, "This Three-day Notice to Pay Rent or Quit *supersedes all previous Three-day Notices* to Pay Rent or Quit, if any."  (Italics added.)  Appellants could rely on this language and pay the $5,000 sought in the second Notice.

---

[4] If appellants wished to raise "any issue that requires consideration of the oral proceedings," they had to provide a reporter's transcript, an agreed statement, or a settled statement.  (Cal. Rules of Court, rule 8.120(b).)  Absent a transcript, the judgment is "*conclusively presumed correct* as to *all evidentiary matters.*"  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

6

Appellants contend the Notices incorporate "an illegal rent increase." The 2020 Addendum temporarily reduced monthly rent (during the pandemic) from $12,000 to $10,000 but stated that any extensions starting May 2021 could be for up to $12,000. In 2021, appellants signed Extension No. 1 at the rate of $12,000, as contemplated in the Addendum.

Appellants believe the rent increases violated the Los Angeles Rent Stabilization Ordinance (LARSO). The trial court correctly found the rent increases were permissible. LARSO does not apply to Fox's rental. (L.A. Mun. Code, § 151.02 ["Rental Units" do not include single family homes].) Appellants claim Fox misled them by citing LARSO in the 2024 Notices. However, appellants did not invoke LARSO when they signed the Lease Extensions, presumably because they knew LARSO does not apply to single family dwellings. The trial court heard testimony and did not believe they were misled.

Finally, appellants assert that rent increases were improper because Fox failed to give notice that the rental is exempt from the Tenant Protection Act of 2019 (TPA). For "a tenancy existing before July 1, 2020," notice "may, but is not required to, be provided in the rental agreement." (Civ. Code, § 1946.2, subd. (e)(8)(B)(ii)(I).) Appellants' tenancy existed since 2018, so TPA notice was not required.

TPA notice is required for tenancies "renewed on or after July 1, 2020." (Civ. Code, § 1946.2, subd. (e)(8)(B)(iii)(I).) Appellants incorrectly claim the Lease was "renewed," not extended. " 'An extension is a stretching or spreading out of the term of the lease. A renewal, on the other hand, creates a new and distinct tenancy, and is not merely a perpetuation of the old one.' " (*In re Marriage of Joaquin* (1987) 193 Cal.App.3d 1529,

1534.)  The Lease Extensions were "incorporated in and made a part of" the 2018 Lease, perpetuating it.  No new tenancy was formed.  TPA notice was not required for the extensions.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



RICHARDSON, J.



GOORVITCH, J.

8